# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SEATING COMPANY<br>401 American Seating Center<br>Grand Rapids, Michigan 49504,<br><br>    *Plaintiff*,<br><br>v.<br><br>WASHINGTON NATIONALS STADIUM, LLC<br>1500 South Capitol Street, SE<br>Washington D.C. 20003,<br><br>    *Serve on Registered Agent*:<br>    CT Corporation System<br>    1015 15th Street, NW<br>    Suite 1000<br>    Washington, DC 20005<br><br>    *Defendant*. | Civil Action No. _____ |

## CIVIL COMPLAINT

NOW COMES Plaintiff, American Seating Company ("American Seating"), by and through its counsel, VARNUM LLP and MALLON & MCCOOL, LLC, and hereby states as its Complaint against Defendant, Washington Nationals Stadium, LLC ("Defendant"), as follows:

### JURISDICTION AND VENUE

1. American Seating is incorporated under the laws of the state of Delaware, and its principal offices are located at 401 American Seating Center, Grand Rapids, Michigan 49504.

2. Defendant, upon information and belief, is a limited liability company organized under the laws of the District of Colombia with its principal offices located at 1500 South Capitol Street, SE, Washington D.C. 20003.

3. The United States District Court for the District of Columbia has *in personam* jurisdiction over Defendant because it conducts business in this forum.

4. The United States District Court for the District of Columbia has jurisdiction of this action under the jurisdictional provisions of 28 U.S.C. § 1332(a) in that the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events giving rise in this matter occurred in this district.

## GENERAL ALLEGATIONS

6. Plaintiff restates the allegations set forth above as though fully restated herein.

7. For over one hundred years, American Seating has designed and built seating and office furniture for, among others, educational institutions, governmental entities, corporations, and individuals.

**Defendant Fails To Perform Under The ADA Purchase Agreement.**

8. American Seating and Defendant entered into a Purchase Agreement dated February 25, 2016 ("ADA Purchase Agreement") pursuant to which American Seating agreed to supply and install equal access swing-away seats ("Seats") at Nationals Park in Washington, D.C. (the "Stadium"). The ADA Purchase Agreement is attached as **Exhibit 1**.

9. Pursuant to the terms of the ADA Purchase Agreement, Defendant agreed to pay American Seating $333.90 per installed Seat and $323.70 per additional uninstalled, stored Seat. The ADA Purchase Agreement called for the purchase of 421 installed Seats at a cost of $140,571.90 and 40 additional uninstalled Seats at a price of $12,948.00, for a total contract price of $153,519.90. *See* Exhibit 1, Ex. A.

10. On or about March 29, 2016, pursuant to the Purchase Order, Defendant made a partial payment in the amount of $38,379.97 (the "ADA Deposit").

11. Thereafter, the parties executed a Change Order effective May 25, 2016 (the "Change Order") to alter the scope of work established by the ADA Purchase Agreement. Per the terms of the Change Order, Defendant reduced the number of seats it agreed to purchase from American Seating from 421 to 351 installed Seats and from 40 to 14 additional uninstalled, stored Seats (together, the "Purchased ADA Seats"). The Change Order thus reduced the total contract price from $153,519.90 to $121,730.70. *See* Change Order, attached as **Exhibit 2**.

12. From approximately June 2016 to August 2016, American Seating delivered the Purchased ADA Seats to Defendant in batches in accordance with the terms of the ADA Purchase Agreement and Change Order (together, "ADA Agreement"), as well as American Seating's communications with Defendant. In each instance, Defendant accepted delivery of the Purchased ADA Seats.

13. Defendant's payment of the ADA Deposit left a balance of $83,350.73 remaining due and owing to American Seating on account of the Purchased ADA Seats.

14. American Seating made repeated demands to Defendant for payment.

15. Defendant failed to pay the remaining amount due under the ADA Agreement.

**Defendant Wrongfully Fails To Pay For 1,000 Club Seats Purchased Under The Suite Seat Agreement.**

16. In November 2016, American Seating and Defendant entered into a separate agreement by which Defendant agreed to pay for the manufacture and installation of club and suite seating at the Stadium (the "Suite Seat Agreement"). *See* Suite Seat Agreement, attached as **Exhibit 3**.

17. Under the Suite Seat Agreement, Defendant agreed to purchase 1,000 club seats (the "Club Seats") and 445 suite seats (the "Suite Seats") from American Seating. *See* Exhibit 3, Ex. A.

18. Under the Suite Seat Agreement, Defendant agreed to pay American Seating $119,600.00 in connection with the manufacture, delivery, and installation of the Club Seats. *Id.*

19. American Seating delivered 1,000 Club Seats pursuant to the terms of the Suite Seat Agreement.

20. Defendant accepted delivery of the 1,000 Club Seats.

21. Defendant has paid American Seating $63,975.88 for the Club Seats, leaving a balance of $55,624.12 in connection with its purchase of the Club Seats.

22. American Seating made repeated demands to Defendant for payment.

23. Defendant failed to pay the remaining amount due under the Suite Seat Agreement.

24. As of this filing, Defendant owes American Seating no less than $55,624.12 pursuant to the Suite Seat Agreement.

**Defendant Has Acted In Bad Faith With Respect To Both**
**The ADA Agreement And The Suite Seat Agreement.**

25. Defendant has based its non-payment for the Purchased ADA Seats on meritless, pretextual assertions.

26. After refusing to pay for the Purchased ADA Seats, Defendant continued to act in bad faith by attempting to exert pressure on American Seating with respect to the ADA Agreement through the separate Suite Seat Agreement.

27. Specifically, when American Seating notified Defendant of its intent to deliver 445 substantially similar Suite Seats pursuant to the terms of the Suite Seat Agreement,

Defendant unreasonably rejected American Seating's delivery of the substantially similar Suite Seats, despite having assured American Seating that it intended to accept the substantially similar Suite Seats.

28. By unreasonably rejecting American Seating's forthcoming delivery of the substantially similar Suite Seats, Defendant anticipatorily repudiated the Suite Seat Agreement.

29. Defendant thus willfully rendered imperfect performance as to both the ADA Agreement and the Suite Seat Agreement on false pretenses, for the purpose of evading both the terms and spirit of each agreement.

**The Belated Return of the Purchased ADA Seats and Purported Setoff.**

30. On or about March 3, 2017 – at least seven months after Defendant accepted delivery of the final batch of the Purchased ADA Seats – Defendant sent American Seating a letter demanding that American Seating return the ADA Deposit to Defendant and retrieve the Purchased ADA Seats from Defendant.

31. On August 24, 2017 – approximately one year after Defendant had accepted the final batch of Purchased ADA Seats – Defendant also notified American Seating that Defendant was shipping the Purchased ADA Seats back to American Seating.

32. Additionally, on August 24, 2017, Defendant informed American Seating that it purportedly exercised a "setoff" of the ADA Deposit amount against the amount that Defendant owes to American Seating under the Suite Seat Agreement on account of the duly delivered and accepted Club Seats.

33. Defendant's attempt to claw back all monies paid pursuant to the ADA Agreement through, among other things, (1) its purported setoff of the amount remaining due and owing on account of the Suite Seat Agreement and (2) its belated return of the Purchased ADA Seats, is a

baseless, bad faith ploy to escape entirely from its payment obligations under the ADA Agreement.

### COUNT I
### BREACH OF CONTRACT (ADA AGREEMENT)

34. Plaintiff restates the allegations set forth above as though fully restated herein.

35. American Seating and Defendant entered into the valid and enforceable ADA Agreement, pursuant to which Defendant agreed to purchase the Purchased ADA Seats.

36. American Seating performed all of its obligations pursuant to the ADA Agreement.

37. Defendant accepted delivery of the Purchased ADA Seats and did not reject them on any basis within a reasonable time of such acceptance.

38. Defendant materially breached the ADA Agreement by failing to pay American Seating the amount due and owing American Seating under the Agreement for the Purchased ADA Seats.

39. On information and belief, in addition to its failure to pay, Defendant also wrongfully recouped its payment of the ADA Deposit.

40. American Seating has suffered damages as a direct result of Defendant's breach of the parties' ADA Agreement.

### COUNT II
### BREACH OF CONTRACT (SUITE SEAT AGREEMENT)

41. Plaintiff restates the allegations set forth above as though fully restated herein.

42. American Seating and Defendant entered into the valid and enforceable Suite Seat Agreement, pursuant to which Defendant agreed to purchase the Club Seats.

43. American Seating performed all of its obligations pursuant to the Suite Seat Agreement.

44. Defendant materially breached the Suite Seat Agreement by failing to pay American Seating the amount due and owing American Seating under the Agreement for the duly delivered, accepted, and installed Club Seats.

45. Defendant unreasonably rejected delivery of the substantially similar Suite Seats.

46. Defendant repudiated the Suite Seat Agreement by its unreasonable rejection of the substantially similar Suite Seats.

47. American Seating has suffered damages as a direct result of Defendant's breach of the parties' Suite Seat Agreement.

### COUNT III
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (ADA AGREEMENT AND SUITE SEAT AGREEMENT)

48. Plaintiff restates the allegations set forth above as though fully restated herein.

49. The ADA Agreement and Suite Seat Agreement (together, "Agreements") contain an implied duty of good faith and fair dealing.

50. Defendant's basis for failing to pay for the Purchased ADA Seats is pretextual and evades the spirit of the ADA Agreement.

51. Defendant's non-payment under the Suite Seat Agreement for the duly delivered, accepted, and installed Club Seats is a bad faith attempt to exert pressure on American Seating with respect to the ADA Agreement.

52. Defendant's basis for purportedly recouping the ADA Deposit payment in connection with the Purchased ADA Seats is pretextual and evades the spirit of both Agreements.

53. Defendant's attempts to gain leverage against American Seating with respect to the ADA Agreement through (1) non-payment of the amount owed American Seating in

connection with the Club Seats; (2) the arbitrary rejection of the substantially similar Suite Seats; and (3) its purported setoff of the ADA Deposit payment demonstrate Defendant's harmful, pretextual, and bad faith actions.

54. Defendant's actions breached its duty of good faith and fair dealing with respect to the Agreements.

55. Defendant's actions had the effect of injuring American Seating's right to receive the fruits of the Agreements, *i.e.*, (1) payment in full for the Purchased ADA Seats (including the ADA Deposit) and (2) payment in full for the Club Seats.

56. American Seating has suffered damages as a direct result of Defendant's breach.

**WHEREFORE**, American Seating respectfully requests that this Court enter judgment in its favor and against Defendant, awarding American Seating an amount not less than $177,354.82, plus interest, consequential and incidental damages, other damages proven at trial, and all other relief that the Court deems just and proper.

Respectfully submitted,

  /s/ Steven J. McCool, Esq.  
STEVEN J. McCOOL  
D.C. Bar No. 429369  
JULIA M. COLEMAN  
D.C. Bar No. 1018085  
MALLON & McCOOL, LLC  
1776 K Street, N.W., Suite 200  
Washington, D.C. 20006  
Office:  (202) 393-7088  
Mobile:  (202) 680-2440  
Fax:  (202) 293-3499  
smccool@mallonandmccool.com  
jcoleman@mallonandmccool.com  

*Local Counsel for Plaintiff*  
*American Seating Company*

V<span>arnum</span> LLP

   /s/ Brion B. Doyle, Esq.
Brion B. Doyle
   (*pro hac vice* application pending)
John J. Rolecki
   (*pro hac vice* application pending)
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
Office: (616) 336-6000
Fax: (616) 336-7000
bbdoyle@varnumlaw.com
jjrolecki@varnumlaw.com

*Counsel for Plaintiff American Seating Company*

12191968_2.docx